UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| OWNERS INSURANCE COMPANY and AUTO-OWNERS INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>VANESSA HAWKINS, individually, as surviving spouse of SAMMY DION HAWKINS, deceased, VANESSA HAWKINS, as administrator of the estate of SAMMY DION HAWKINS, deceased, SUN GROUP HOMES II, LLC, and BIRGE & HELD ASSET MANAGEMENT, LLC,<br><br>Defendants. | CIVIL ACTION NO.<br>1:22-CV-01265-JPB |

**ORDER**

This matter is before the Court on The Cincinnati Insurance Company's ("Cincinnati") Motion to Intervene [Doc. 36]. This Court finds as follows:

**BACKGROUND**

This is a declaratory judgment action relating to insurance coverage following a shooting death at an apartment property in August 2020. During the events relevant to this case, Sun Group Homes II, LLC ("Sun Group") owned Westwood Apartments, which were managed by Birge & Held Asset Management,

LLC ("Birge").  [Doc. 19, p. 2].  Sun Group held two different insurance policies, one issued by Owners Insurance Company ("Owners") and one by Auto-Owners Insurance Company ("Auto-Owners"); together, Owners and Auto-Owners are "Plaintiffs."  [Doc. 1, p. 9].  Both policies ("Plaintiffs' Policies") were effective from January 28, 2020, to January 28, 2021.  Id.  Birge is listed as an additional insured on each policy.  Id.  Birge is also the named insured on a commercial general liability and umbrella liability insurance policy, issued by Cincinnati, that was effective from April 1, 2018, to April 1, 2021 (the "Cincinnati Policy").  See [Doc. 36-6, p. 3]; see also [Doc. 36-2, p. 2].

On August 9, 2020, Sammy Hawkins was shot while standing on the balcony of one of the Westwood Apartments.  [Doc. 1, p. 6–7].  On January 13, 2021, Vanessa Hawkins, the administrator of Sammy Hawkins' estate, sent a demand letter to Sun Group requesting insurance information.  [Doc. 19, p. 3].  The insurance claim related to this incident was submitted to Plaintiffs' Policies on January 27, 2021.  Id. at 3–4.  Plaintiffs subsequently sent reservation of rights letters to Sun Group and to Birge, advising that they were reserving the right to deny coverage under Plaintiffs' Policies for untimely notice.  [Doc. 1, pp. 7–8].

On February 3, 2022, Hawkins sued Sun Group in the State Court of Gwinnett County (the "Underlying Lawsuit").  Id. at 6.  On March 7, 2022, Sun

2

Group filed a third-party complaint in the Underlying Lawsuit against Birge. Id. at 8. On March 30, 2022, Plaintiffs filed suit in this Court, seeking a declaratory judgment about their rights and obligations under their respective policies. [Doc. 1]. Plaintiffs specifically argue that because Sun Group and Birge did not notify them of the August 2020 incident until January 2021, they failed to comply with the policies' provisions requiring timely notice. As a result, Plaintiffs seek a declaratory judgment that they owe no duty to defend or indemnify Sun Group and/or Birge in the Underlying Lawsuit.[1] [Doc. 1, p. 27].

After learning of this suit in June 2022, Cincinnati filed the instant Motion to Intervene on August 29, 2022. [Doc. 36]. Cincinnati "similarly seek[s] a declaration that it does not owe a duty to defend or indemnify [its] insured Birge in the Underlying Lawsuit." [Doc. 36-6, p. 2]. Cincinnati asserts that Birge did not provide notice of the August 2020 shooting until April 1, 2022, and therefore "breached its duties under the Cincinnati Policy as conditions precedent to coverage." Id. at 3. Cincinnati seeks to intervene as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure or, alternatively, asks this Court to grant the Motion to Intervene under Rule 24(b). Id. Sun Group, Birge and

---

[1] The Underlying Lawsuit has since been stayed pending the resolution of this declaratory judgment matter. [Doc. 37-1].

3

Hawkins ("Defendants") oppose the Motion. See [Doc. 37]; [Doc. 38]; [Doc. 39]. Because Plaintiffs did not respond to the Motion, the Court assumes that Plaintiffs are unopposed to Cincinnati's intervention. See N.D. Ga. Civ. R. 7.1(B) ("Failure to file a response shall indicate that there is no opposition to the motion.").

## ANALYSIS

### A. Intervention as of Right

Rule 24 of the Federal Rules of Civil Procedure governs the intervention of third parties in litigation. Under Rule 24(a)(2), the Court must permit a third party to intervene as of right if the party meets the following four-part test:

> (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.

Stone v. First Union Corp., 371 F.3d 1305, 1308–09 (11th Cir. 2004) (quoting Worlds v. Dep't of Health & Rehabilitative Servs., 929 F.2d 591, 593 (11th Cir. 1991)). If a party "establishes each of the four requirements, the district court must allow him to intervene." Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989). But "[p]utative intervenors . . . bear the burden of proof to establish *all four* bases for intervention as a matter of right." Burke v. Ocwen Fin. Corp., 833 F.

4

App'x 288, 291 (11th Cir. 2020) (emphasis added).  Cincinnati cannot meet factor three, and thus the Court discusses only that factor below.

The third factor asks whether the proposed intervenor "is so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest." Fed. R. Civ. P. 24(a)(2).  The Eleventh Circuit Court of Appeals "has noted that the ability to separately litigate defeats the impairment element." Burke, 833 F. App'x at 292.

Cincinnati asserts that "much of the same facts related to Birge's failure to notify [Plaintiffs] of the incident . . . giving rise to the Underlying Lawsuit will apply to Cincinnati." [Doc. 36-6, p. 8].  Cincinnati thus claims that "any rulings or findings of fact with respect to Birge's actions and notice related to the subject incident . . . may result in *res judicata* or otherwise impair Cincinnati's ability to litigate those issues in a separate lawsuit." [Doc. 36-6, p. 8].  The Court is not persuaded by these arguments.

First, Cincinnati does not explain how or why the facts related to Birge's notice to Plaintiffs of the August 2020 shooting apply to Birge's notice to Cincinnati.  Plaintiffs assert that Birge's January 2021 notice of the August 2020 incident—a five-month delay—was not timely under the terms of Plaintiffs' Policies, both of which list Sun Group and Birge as insureds.  Cincinnati argues

5

that Birge's April 2022 notice of the August 2020 shooting—a nearly nineteen-month delay—was not timely under the Cincinnati Policy, which was issued only to Birge. As Sun Group argues, a finding that Birge provided timely notice to Plaintiffs in January 2021 "will have no bearing on whether notice to a different insurer [fourteen] months later was timely." [Doc. 37, p. 5]. As the Court sees it, Cincinnati may protect its interests by filing its own declaratory judgment action against Birge. Intervention in the present lawsuit is not strictly necessary to achieve that end. See, e.g., Worlds, 929 F.2d at 594–95 (finding that this factor was not met where the prospective intervenors "ha[d] the opportunity to return to the district court in [a] separate suit").

Second, Cincinnati does not explain in any detail why *res judicata* would apply to its claims. In its reply brief, Cincinnati cites Lancer Insurance Co. v. Hitts, No. 5:09-CV-302, 2010 WL 2867836, at *2 (M.D. Ga. July 20, 2010), as amended (July 22, 2010), to support its *res judicata* argument, [Doc. 44, p. 7]. Lancer, however, is easily distinguishable. In that case, Amerisure sought to intervene in a declaratory judgment action initiated by Lancer Insurance Company, and the court found that Amerisure was entitled to intervene as of right. Lancer, 2010 WL 2867836, at *1. Importantly, Amerisure was also a party in the underlying personal injury suit. Id. Both Lancer and Amerisure had issued

6

insurance policies, and both of those policies were the subject of the underlying personal injury suit.  Id.  Therefore, it was clear that the outcome of the declaratory judgment action, initiated by Lancer, could potentially "foreclose legal arguments and remedies, such as those for contribution and subrogation, that may otherwise be available to Amerisure in the underlying litigation."  Id. at *2.  Those facts are not present here. Cincinnati is not a party to the Underlying Lawsuit, and it is unclear whether or how the outcome of this declaratory judgment action will significantly impair Cincinnati's ability to protect its interest.  Cf. Sellers v. Nationwide Mut. Fire Ins. Co., 968 F.3d 1267, 1272 (11th Cir. 2020) ("[T]here is a general rule against the application of issue preclusion to nonparties to the prior litigation.").  Because Cincinnati has not made the required showing for this factor, it is not entitled to intervene as a matter of right in this action.

**B.      Permissive Intervention**

Permissive intervention is governed by Rule 24(b).  A party seeking to intervene under this rule "must show that:  (1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common."  Chiles, 865 F.2d at 1213.  Even if a party makes this showing, the district court retains discretion to deny intervention.  Id.  This Court must also

"consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

1. *Timeliness*

District courts consider four factors when determining whether a motion to intervene was timely filed:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

United States v. Jefferson County, 720 F.2d 1511, 1516 (11th Cir. 1983).

Cincinnati filed this Motion on August 29, 2022, approximately two months after learning of the action in June 2022.  This period is a reasonable length of time between when Cincinnati learned of this matter and when it sought to intervene. See Georgia v. U.S. Army Corps of Eng'rs, 302 F.3d 1242, 1259 (11th Cir. 2002) (finding that a six-month delay did not "in itself constitute[] untimeliness," even when the motion to intervene was filed "after discovery was largely complete and

8

the parties had agreed upon a schedule for the briefing of the case").[2]  As such, the Court finds that Cincinnati's Motion is timely.

Defendants argue that Cincinnati did not adequately explain the two-month delay and that, had it acted sooner, it could have participated in planning conferences and in the preparation of the parties' Joint Preliminary Report and Discovery Plan.  See [Doc. 38, p. 9].  Defendants principally contend that permitting Cincinnati to intervene would likely result in an extension of the discovery period, which would prejudice Sun Group and Birge by prolonging this action and, in turn, prolonging the Underlying Lawsuit.  See [Doc. 37, p. 7].  Defendants have not provided legal authority that a two-month delay, like the one in this case, constitutes untimeliness.  Nor have they cited authority for the proposition that a potential discovery extension constitutes prejudice, let alone sufficient prejudice to deny intervention.  The Court is therefore satisfied that the Motion is timely.

    2.    *Common Question of Law or Fact*

The Court may permit intervention "when an applicant's claim or defense and the main action have a question of law or fact in common."  Athens Lumber

---

[2] Although this case's timeliness analysis was in the context of intervention as of right, see U.S. Army Corps, 302 F.3d at 1259–60, "[t]his analysis applies whether intervention of right or permissive intervention . . . is claimed," Jefferson County, 720 F.2d at 1516.

Co. v. FEC, 690 F.2d 1364, 1367 (11th Cir. 1982) (quoting Fed. R. Civ. P. 24(b)(2)). Cincinnati's claim concerns its obligations under an insurance policy for the August 2020 shooting and, more specifically, whether it received timely notice from Birge under that policy. The existing declaratory judgment action concerns Plaintiffs' obligations under their insurance policies for the August 2020 shooting and, specifically, whether Birge and Sun Group provided timely notice under those policies. Cincinnati's claim thus shares a question of law in common with the main action: the effect of potentially late notice, of the same underlying incident, under an insurance policy. This is sufficient to support permissive intervention. See, e.g., Nationwide Mut. Fire Ins. Co. v. Waddell, No. 5:04-CV-429, 2005 WL 2319698, at *3 (M.D. Ga. Sept. 22, 2005) ("The issue in this case is whether the insurance policy obligates Plaintiff to defend any claims and/or indemnify any losses that may arise . . . . As a secondary insurer in this action, State Farm clearly has an interest sufficient to support its claim that Plaintiff is obligated under its insurance policy.").

Moreover, the Court believes that permitting Cincinnati to intervene in this action is in the best interest of judicial economy. See Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist., 983 F.2d 211, 216 (11th Cir. 1993) ("Any doubt concerning the propriety of allowing intervention should be resolved in favor

of the proposed intervenors because it allows the court to resolve all related disputes in a single action."); see also Lancer, 2010 WL 2867836, at *3 ("Allowing Amerisure to intervene now, therefore, will make the overall litigation proceed more efficiently because the Court will have the opportunity to resolve these related insurance contract disputes together."). The Court will therefore allow Cincinnati to intervene in this action pursuant to Rule 24(b).

## CONCLUSION

For the foregoing reasons, the Motion to Intervene [Doc. 36] is **GRANTED**. The Clerk is **DIRECTED** to add The Cincinnati Insurance Company as an Intervenor-Plaintiff in this action.

**SO ORDERED** this 7th day of February, 2023.

J. P. BOULEE
United States District Judge