UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| OWNERS INSURANCE COMPANY and AUTO-OWNERS INSURANCE COMPANY,<br><br>       Plaintiffs,<br><br>THE CINCINNATI INSURANCE COMPANY,<br><br>       Intervenor-Plaintiff,<br><br>   v.<br><br>VANESSA HAWKINS, individually, as surviving spouse of SAMMY DION HAWKINS, deceased, VANESSA HAWKINS, as administrator of the estate of SAMMY DION HAWKINS, deceased, SUN GROUP HOMES II, LLC, and BIRGE & HELD ASSET MANAGEMENT, LLC,<br><br>       Defendants. | CIVIL ACTION NO. 1:22-CV-01265-JPB |

## **ORDER**

Before the Court are two motions:  Owners Insurance Company and Auto-Owners Insurance Company's Motion for Summary Judgment [Doc. 50] and Sun Group Homes II, LLC's Motion for Summary Judgment [Doc. 54].  This Court finds as follows:

## PROCEDURAL HISTORY

This is a declaratory judgment action relating to insurance coverage following a shooting death at an apartment property.  During the events at issue, Sun Group Homes II, LLC ("Sun Group") owned the property, which was managed by Birge & Held Asset Management, LLC ("Birge").  Sun Group and Birge held insurance policies issued by Owners Insurance Company ("Owners") and by Auto-Owners Insurance Company ("Auto-Owners").  Owners and Auto-Owners are together the "Insurers."

On February 3, 2022, Vanessa Hawkins, the decedent's surviving spouse and the administrator of his estate, sued Sun Group in the State Court of Gwinnett County (the "Underlying Lawsuit").  The Underlying Lawsuit asserts the following claims:  (1) failure to keep the premises safe; (2) allowing and maintaining a nuisance; (3) failure to repair; and (4) negligent hiring, training, supervision and retention.  On March 7, 2022, Sun Group filed a third-party complaint against Birge in the Underlying Lawsuit, alleging that Birge is contractually obligated to indemnify Sun Group pursuant to an agreement that is not at issue here.

On March 30, 2022, the Insurers filed suit in this Court against Vanessa Hawkins, Sun Group and Birge.[1]  [Doc. 1].  The Insurers seek a declaratory judgment that because Sun Group and Birge failed to provide timely notice under the policies, the Insurers owe them no duty of defense or indemnification in the Underlying Lawsuit.

The Insurers moved for summary judgment on November 21, 2022.  [Doc. 50].  Sun Group moved for summary judgment on November 23, 2022.  [Doc. 54].  Because both motions address the sole issue of timely notice under the applicable policies, the Court addresses the motions together.

## FACTUAL HISTORY

### A.    Exhibit Objections

Before the Court sets forth the facts of this case, the Court must resolve disputes about the admissibility of certain evidence.  The Insurers objected to the following exhibits upon which Sun Group and Birge rely in their briefing:  the declarations of Therese Cochran, [Doc. 19-1], [Doc. 62-1]; the affidavit of James

---

[1] The Clerk of Court entered default against Birge on June 1, 2022.  The Court granted Birge's motion to set aside default on February 1, 2023.  [Doc. 73].  Additionally, the Cincinnati Insurance Company, which had issued an insurance policy to Birge, moved to intervene as a plaintiff in this action under Rule 24 of the Federal Rules of Civil Procedure.  See [Doc. 36].  The Court granted that motion on February 7, 2023.  [Doc. 74].

G. Kordik, [Doc. 54-1]; and a memorandum prepared by defense counsel in the Underlying Lawsuit, [Doc. 54-3].  The Insurers argue that these exhibits are inadmissible hearsay.  At the outset, the Court notes that none of these exhibits are dispositive to the instant motions.

A statement is hearsay if it is made by an out-of-court declarant and used for the truth of the matter asserted.  Fed. R. Evid. 801(c).  "The general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.'"  Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999) (footnote omitted) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  However, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'"  Id. at 1323.

The first exhibits at issue are the declarations of Therese Cochran, the Vice President of Client Assets for Birge.  Birge relies on her declarations for the assertions that Sammy Hawkins, the decedent, was shot with a high-powered rifle and that the shots came from off the property.  Cochran provided two declarations for this case, which the Court addresses in reverse order.  In the second declaration, she states that "Birge was notified by Officer Catoa Baldwin of the Albany Policy

4

Department that Mr. Hawkins was shot with a 'high-powered rifle.'" [Doc. 62-1, p. 2]. The Insurers objected to this fact as inadmissible hearsay. [Doc. 67].

Officer Baldwin may be called to testify at trial to address the hearsay issue. See Lewis v. Residential Mortg. Sols., 800 F. App'x 830, 834 (11th Cir. 2020) ("The most obvious way to reduce hearsay to admissible form is to call the declarant to testify at trial."). The Court will thus consider this fact in deciding the instant motions.

Birge relies on Cochran's first declaration for the claim that "[a]ccording to reports, the shots came from off the property." See [Doc. 54-5, p. 2]; [Doc. 19-1, p. 3]. In the first declaration, Cochran states the following: "[t]he information Birge received from the Albany Police Department is . . . that the shots likely came from off the Westwood Apartments property." [Doc. 19-1, pp. 2–3]. Unlike the assertion in Cochran's second declaration, reducing this statement to admissible form at trial poses a challenge. While Cochran herself may be called to testify at trial, her testimony about the source of the shots would be hearsay because she lacks personal knowledge to make any such statement; as her declaration shows, she relies on unspecified "reports." The Court therefore declines to consider this portion of Cochran's first declaration.

The second exhibit at issue is the affidavit of James Kordik, Sun Group's general counsel.  In the affidavit, he states the following:  "Sun Group learned that a man who was not one of our tenants was shot by a high-powered rifle while on the patio of an apartment with a line of sight to a public roadway. . . .  Sun Group also learned that law enforcement was investigating the shooting as an intentional murder and not an accident."  [Doc. 54-1, p. 2].  As with Cochran's first declaration, it is unclear how these statements—particularly what Kordik, an out-of-court declarant, learned from "law enforcement"—might be reduced to admissible form without contravening the prohibition against hearsay.  Consequently, the Court will not consider them when deciding the parties' motions.

Third and finally, Sun Group and Birge rely on a February 28, 2022 memorandum prepared by defense counsel (who was retained by the Insurers) in the Underlying Lawsuit.  See [Doc. 54-3].  Nearly the entirety of the memorandum is redacted as work product and privileged.[2]  The Insurers objected to the

---

[2] See MapleWood Partners, L.P. v. Indian Harbor Ins. Co., 295 F.R.D. 550, 629 (S.D. Fla. 2013) (observing that an insurer's claim file generally does not enjoy work-product protection "even if an employee handling the claim is an attorney, or if the insurer hired outside or monitoring counsel to assist with the claim processing" because "the claim file is a business record, prepared in the ordinary course of the insurer's business, until the date on which coverage is denied").

memorandum as inadmissible hearsay. [Doc. 61]. The memorandum would likely be admissible at trial as a business record. See Fed. R. Evid. 803(6). As the Court discusses in part B of the analysis, see supra, the memorandum does not change the outcome of the pending motions.

**B.    Factual Overview**

The Court derives the facts of this case from the following documents, in addition to conducting its own review of the record:

- The Insurers' Statement of Undisputed Material Facts, [Doc. 50-8];
- Sun Group's Response to the Insurers' Statement of Undisputed Material Facts and Statement of Additional Material Facts that Present a Genuine Issue for Trial, [Doc. 57];
- Birge's Response to the Insurers' Statement of Undisputed Material Facts, [Doc. 62-3];
- The Insurers' Responses and Objections to Sun Group's Statement of Additional Material Facts, [Doc. 66];
- Birge's Statement of Additional Material Facts that Present a Genuine Issue for Trial, [Doc. 62-2];
- The Insurers' Responses and Objections to Birge's Statement of Additional Material Facts, [Doc. 65];
- Statement of Undisputed Material Facts in Support of Sun Group's Motion for Summary Judgment, [Doc. 54-5];
- The Insurers' Responses and Objections to Sun Group's Statement of Undisputed Material Facts, [Doc. 60];
- The Insurers' Statement of Additional Facts, [Doc. 59]; and
- Sun Group's Response to the Insurers' Statement of Additional Facts, [Doc. 69].

The facts of this case are almost entirely undisputed, and for the purpose of adjudicating the instant motions, the facts are as follows.

**1.      The Insurance Policies**

This matter concerns two insurance policies.  The first is a commercial general liability insurance policy (the "CGL Policy") that Owners issued to Sun Group for the policy period of January 28, 2020, to January 28, 2021.  [Doc. 50-8, p. 2].  The second is a commercial umbrella policy (the "Umbrella Policy") issued by Auto-Owners to Sun Group for the same policy period.  Id.  Birge is an additional insured on both policies.  Id.

Under the CGL Policy, an "occurrence" triggers coverage for bodily injury. [Doc. 65, p. 10].  The CGL Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  [Doc. 50-8, p. 5].  The CGL Policy imposed the following duties on the insured with respect to providing notice:

> **a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
>> **(1)**    How, when and where the "occurrence" or offense took place;
>>
>> **(2)**    The names and addresses of any injured persons and witnesses; and

        **(3)**     The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.**    If a claim is made or "suit" is brought against any insured, you must:

        **(1)**     Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)**     Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

Id. at 4–5.

Under the Umbrella Policy, Auto-Owners agreed to "pay those sums included in ultimate net loss that the insured becomes legally obligated to pay as damages because of" bodily injury "caused by an incident." Id. at 7. The Umbrella Policy defines "incident" as the following:[3]

When coverage applies on an occurrence basis, incident means an accident with respect to:

    **a.**    Bodily injury, including damages claimed by any person or organization for care, loss of services or death resulting at anytime from the bodily injury . . . .

Id. at 6–7 (emphasis omitted). As with the CGL Policy, the Umbrella Policy imposed certain notice requirements:

---

[3] Both policies refer to an "offense" an addition to an occurrence (in the CGL Policy) and as an alternative definition for "incident" (in the Umbrella Policy). The parties agree that the "offense" language is not at issue in this case. [Doc. 65, p. 10].

**Notice of Incident, Claim or Suit**

1.  When an incident likely to involve us takes place, the insured must notify us in writing as soon as practicable, of any incident, claim or suit.

    Notice of an incident is not notice of a claim.

    The notice must give:

    a.  Your name and policy number;

    b.  The time, place and circumstances of the incident; and

    c.  The names and addresses of injured persons and witnesses.

    The insured shall promptly take at his or her expense all reasonable steps to prevent other bodily injury, property damage, personal injury or advertising injury from arising out of the same or similar conditions, but such expense shall not be recoverable under this policy.

2.  If claim is made or suit is brought, we must be advised promptly.  All papers in connection with claims or suit must be sent to us without delay.

Id. at 7–9 (emphasis omitted).  Finally, coverage under the Umbrella Policy was available "[w]hen underlying insurance"—here, the CGL Policy—"does not apply to an incident which is covered by [the Umbrella Policy]," up to the limits of liability.  [Doc. 1-8, p. 25].

### 2.      August 9, 2020 Shooting

In August 2020, Sun Group owned Westwood Apartments in Albany, Georgia.  [Doc. 66, p. 2].  Birge served as the property manager for the premises.[4] [Doc. 19-1, p. 2].  On August 9, 2020, Sammy Hawkins was standing on the balcony of an apartment at the Westwood Apartments when he was struck by multiple bullets and killed.  [Doc. 50-8, p. 9].  The apartment where the shooting occurred was on the ground floor; it has a line of sight to a public roadway and to multiple parking lots on the property.  [Doc. 60, p. 4].  Sammy Hawkins was not a tenant of Westwood Apartments, but his relatives had a valid lease agreement at the time of the shooting.  [Doc. 66, p. 4].

Birge learned about the shooting on August 9, 2020, from Officer Catoa Baldwin of the Albany Police Department.  [Doc. 65, p. 3].  Sun Group learned about the shooting on August 10, 2020.  [Doc. 66, p. 4].  Officer Baldwin reported that Sammy Hawkins was shot with a high-powered rifle.  [Doc. 62-1, p. 2].  The record does not contain evidence about the identity or location of the shooter.

On December 14, 2020, Sun Group received a letter of representation from the Rafi Law Firm referencing the shooting of Sammy Hawkins.  [Doc. 66, p. 8].

---

[4] Sun Group has since sold the property, and Birge no longer serves as the property manager.  [Doc. 19-1, p. 2].

On January 13, 2021, Christopher Stokes, an attorney representing Vanessa Hawkins, sent a request for insurance information to Sun Group and the Westwood Apartments.  [Doc. 65, p. 5].  This letter referenced Sammy Hawkins' death, and Birge ultimately received a copy of the letter.  Id.

On January 27, 2021, Sun Group provided notice of the shooting to its broker for transmission to the Insurers, which led to the filing of an insurance claim.  [Doc. 66, p. 8]; [Doc. 65, p. 6].  The Insurers thus learned of the shooting for the first time on January 27, 2021.  [Doc. 65, p. 6].

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is

so one-sided that one party must prevail as a matter of law.'"  Allen, 121 F.3d at

646 (quoting Anderson, 477 U.S. at 251).

      The party moving for summary judgment bears the initial burden of showing

that no genuine issue exists as to any material fact, "and in deciding whether the

movant has met this burden the court must view the movant's evidence and all

factual inferences arising from it in the light most favorable to the nonmoving

party."[5]  Id.  After the movant satisfies this initial burden, the nonmovant bears the

burden of showing specific facts indicating that summary judgment is improper

because a material issue of fact does exist.  Id.  However, "[a] mere 'scintilla' of

evidence supporting the opposing party's position will not suffice; there must be

enough of a showing that the jury could reasonably find for that party."  Walker v.

Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting Anderson, 477 U.S. at 251).

If the record taken as a whole cannot lead "a rational trier of fact to find for the

non-moving party, there is 'no genuine issue for trial.'"  Matsushita Elec. Indus.

Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of

Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)).

---

[5] On cross-motions for summary judgment, as in this case, the Court views the facts "in
the light most favorable to the non-moving party on each motion."  Chavez v. Mercantil
Commercebank, N.A., 701 F.3d 896, 899 (11th Cir. 2012).

13

## ANALYSIS

Insurance is a matter of contract in Georgia,[6] "and the parties to an insurance policy are bound by its plain and unambiguous terms." Richards v. Hanover Ins. Co., 299 S.E.2d 561, 563 (Ga. 1983). The construction of unambiguous terms in an insurance policy is a question of law for the Court. Bramley v. Nationwide Affinity Ins. Co. of Am., 814 S.E.2d 770, 773 (Ga. Ct. App. 2018). "The ordinary principle of contract law, that a party seeking to recover under a contract must perform any applicable condition precedent before the contract becomes absolute and obligatory upon the other party, applies to contracts of insurance." Plantation Pipe Line Co. v. Stonewall Ins. Co., 780 S.E.2d 501, 509 (Ga. Ct. App. 2015) (footnote omitted). Consequently, an insured may forfeit insurance coverage by failing "to satisfy a condition precedent to coverage under the contract." Id.

The parties agree that the sole issue for resolution by the Court is whether Sun Group and Birge failed to timely notify the Insurers under the CGL Policy and the Umbrella Policy. See [Doc. 65, p. 11]. The central facts are undisputed: the shooting occurred on August 9, 2020; Birge learned about the shooting that day, and Sun Group on August 10, 2020; Sun Group provided notice to the Insurers on January 27, 2021; and both policies require notice "as soon as practicable."

---

[6] There is no dispute that Georgia law governs the motions before the Court.

The notice requirements differ slightly with respect to the two policies at issue.  Consequently, the Court addresses the question of timely notice pursuant to the CGL Policy and the Umbrella Policy, in turn, below.

## A.     The CGL Policy

The CGL Policy required notice "as soon as practicable of an 'occurrence' or an offense which may result in a claim."  [Doc. 50-8, pp. 4–5].  As a threshold matter, Sun Group argues that this language is ambiguous.  The Court discusses whether the CGL Policy is ambiguous before turning to the question of notice.

### 1.     Whether the Notice Provision Is Ambiguous

Sun Group claims that the notice provision in the CGL Policy is ambiguous, pointing to the following language:  "You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense *which may result in a claim.*"  According to Sun Group, the phrase "which may result in a claim" could be fairly read as modifying only "offense," not "offense" *and* "occurrence."  In Sun Group's interpretation, then, an "occurrence" is only an "accident" (as it is defined elsewhere in the policy)—*not* an "occurrence" that "may result in a claim."

This argument is unconvincing.  Courts in this district routinely interpret identical policy language to be unambiguous.  See Brit UW Ltd. v. Hallister Prop. Dev., LLC, 6 F. Supp. 3d 1321, 1329 (N.D. Ga. 2014) (interpreting identical

language and finding that the policy "expressly requires notice of any occurrence that 'may result in a claim'"); <u>Nationwide Prop. & Cas. Ins. Co. v. Sewell Vault & Monument, Inc.</u>, No. 3:11-CV-92, 2012 WL 13028694, at *5 (N.D. Ga. Feb. 13, 2012) ("[A]s a condition precedent to coverage, the policy required Sewell to notify Nationwide 'as soon as practicable of an "occurrence" . . . which may result in a claim.'" (alteration in original)).  This Court agrees and concludes that the CGL Policy's notice provision is unambiguous and, specifically, that the provision applies to any occurrence that "may result in a claim."

### 2.    Whether Notice Was Timely

The Court now turns to whether, as a matter of law, Sun Group and Birge provided notice "as soon as practicable" under the CGL Policy.  As this Court has noted, the parties dispute very few of the facts in this case.  What they do dispute is when Sun Group and Birge were obliged to notify the Insurers of the shooting. Sun Group claims that it did not view the shooting as an "occurrence" that required notice until December 14, 2020, when it received the letter of representation. Birge makes similar arguments, referencing instead the January 13, 2021 letter of which it ultimately received a copy.  The Insurers claim that Sun Group and Birge should have provided notice shortly after August 10, 2020, when both had learned

about the shooting, and thus that the five-month delay between this date and the

ultimate date of notice, January 27, 2021, is unreasonable.

      "In general, the question of whether an insured gave notice of an event or

occurrence 'as soon as practicable,' as required by a policy of insurance, is a

question for the factfinder."  Plantation Pipeline Co. v. Royal Indem. Co., 537

S.E.2d 165, 167 (Ga. Ct. App. 2000).  However, "[a]n insured or insurer may be

entitled to summary judgment if the delay (or justification for the delay) was

reasonable or unreasonable as a matter of law."  SiaSim Columbia, LLC v.

Scottsdale Ins. Co., No. 21-12918, 2022 WL 2352323, at *3 (11th Cir. June 29,

2022) (applying Georgia law).  The Georgia Court of Appeals has described the

reasonableness inquiry as follows:

> "[I]t is the nature and circumstances of 'the accident' or 'the incident'
> and the immediate conclusions an ordinarily prudent and reasonable
> person would draw therefrom that determine whether an insured has
> reasonably justified his decision not to notify the insurer."  Relevant
> circumstances include the nature of the event, the extent to which it
> would appear to a reasonable person in the circumstances of the
> insured that injuries or property damage resulted from the event, and
> the apparent severity of any such injuries or damage.

Forshee v. Emps. Mut. Cas. Co., 711 S.E.2d 28, 31 (Ga. Ct. App. 2011) (citation

omitted) (quoting S. Guar. Ins. Co. v. Miller, 358 S.E.2d 611, 612 (Ga. Ct. App.

1987)).  "The burden is on the insured to excuse his failure to perform any such

unambiguous term of the contract."  Starstone Nat'l Ins. Co. v. McCanick, No.

1:20-CV-713, 2021 WL 7541404, at *4 (N.D. Ga. Dec. 20, 2021) (quoting

Criterion Ins. Co. v. Horton, 231 S.E.2d 814, 815 (Ga. Ct. App. 1976)).

 Having reviewed in full the parties' arguments and the record in this case,

the Court finds that Sun Group and Birge's January 27, 2021 notice was

unreasonable as a matter of law.  Birge and Sun Group both learned about the

shooting by August 10, 2020, yet they did not provide notice to the Insurers for

over five months.  The nature and circumstances of the event at issue (a shooting

on a property owned by Sun Group and managed by Birge), not to mention the

severity of the injuries (death), would lead any ordinarily prudent and reasonable

person to conclude that Sun Group and Birge might be held liable for the shooting.

Ill. Union Ins. Co. v. NRI Constr. Inc., 846 F. Supp. 2d 1366, 1371 (N.D. Ga.

2012) ("The duty to provide notice to the insurer is triggered when the insured

actually knew or should have known of the possibility that it might be held liable

for the occurrence in question." (quoting S.C. Ins. Co. v. Coody, 957 F. Supp. 234,

237 (M.D. Ga. 1997))).

 Additionally, a five-month delay in notice is within the realm of what

Georgia courts hold to be unreasonable.  "Courts applying Georgia law have held

that delays of as little as three to four months preclude recovery as a matter of

law."  Allstate Ins. Co. v. Airport Mini Mall, LLC, 265 F. Supp. 3d 1356, 1378

(N.D. Ga. 2017); see also Hathaway Dev. Co. v. Ill. Union Ins. Co., 274 F. App'x

787, 791 (11th Cir. 2008) (applying Georgia law and upholding a district court's

determination that a four-month delay in notice was unreasonable as a matter of

law); Bituminous Cas. Corp. v. J. B. Forrest & Sons, Inc., 209 S.E.2d 6, 8 (Ga. Ct.

App. 1974) (finding that a delay of four months between the underlying accident

and notice was unreasonable); Horton, 231 S.E.2d at 815 (concluding that "oral

notice almost [four] months after [an] accident[] was neither proper nor timely");

cf. Starstone, 2021 WL 7541404, at *4 (finding that under an insurance policy

requiring "prompt notice," a six-month delay in notifying the insurer about a fatal

shooting at an apartment property was unreasonable as a matter of law).[7]

Consequently, Sun Group and Birge's five-month delay in providing notice to the

Insurers under the CGL Policy is unreasonable.

Sun Group's primary argument is that it "did not recognize or perceive a

situation in the shooting that could possibly lead to someone bringing a claim."[8]

[Doc. 56, p. 13].  This contention is unpersuasive.  As this Court explained above,

---

[7] Because "Georgia precedent shows that 'prompt' has the same meaning as terms like 'as soon as practicable' and 'immediate,'" State Farm Fire & Cas. Co. v. LeBlanc, 494 F. App'x 17, 22 (11th Cir. 2012), case law about "prompt" notice is informative for this matter.

[8] Birge makes very similar arguments in its response to the Insurers' motion.  See [Doc. 62, pp. 12–13].

the "ordinary policyholder" would recognize that the shooting death of an individual on the property owned or managed by the policyholder could possibly lead to a claim.  Am. Ins. Co. v. Evercare Co., 699 F. Supp. 2d 1361, 1366 (N.D. Ga. 2010), aff'd, 430 F. App'x 795 (11th Cir. 2011).  This is the case even when construing the facts most favorably to Sun Group:  an individual who was not a tenant was shot by a high-powered rifle while standing on a balcony that was visible from a public roadway.  E.g., SiaSim Columbia, 2022 WL 2352323, at *4 (finding that the insured's justification for the delay—"that it did not realize the extent of the damage"—was "unreasonable as a matter of law because the extent of the damage was obvious").  These circumstances would invariably lead an ordinary policyholder to foresee the possibility of a claim warranting notice to the insurer.

Furthermore, Sun Group and Birge's position is untenable under Georgia law.  An insured may not "withhold[] notice based on its unilateral assessment of the liability issues arising from an occurrence."  Brit UW, 6 F. Supp. 3d at 1329. In other words, "an insured cannot avoid the notice requirement by relying on its subjective belief that it has no liability."  Allstate Ins., 265 F. Supp. 3d at 1379; see also Evercare, 699 F. Supp. 2d at 1366 ("An insured 'cannot avoid the requirement of prompt notice by claiming that it believed it was not liable.'" (quoting Coody,

957 F. Supp. at 238)); Richmond v. Ga. Farm Bureau Mut. Ins. Co., 231 S.E.2d

245, 249 (Ga. Ct. App. 1976) ("Justification for failure to give notice as soon as

practicable . . . may not include the insured's conclusion 'that he was free of fault

and that there was no liability to the other party.'" (quoting Bituminous, 209

S.E.2d at 9)).  As stated earlier, Sun Group specifically asserts that the December

14, 2020 letter of representation was the first time it learned of the possibility of

any kind of insurance claim, and Birge makes the same assertion as to the January

13, 2021 letter.  These arguments are unavailing.[9]  See Auto Owners Ins. Co. v.

Sapp, No. 1:15-CV-90, 2017 WL 957361, at *4 (M.D. Ga. Mar. 10, 2017) (finding

an insured's justification for a four-month delay to be "unreasonable as a matter of

law" where the insured claimed that they did not foresee a claim "until receiving

[a] demand letter").

    In sum, a delay of five months between the occurrence in this case—a fatal

shooting—and notice to the insurer is unreasonable as a matter of law.  Because

"[a]n insured is not justified in failing to give notice by the belief that an insurance

policy does not cover an occurrence," State Farm Fire & Cas. Co. v. Walnut Ave.

Partners, LLC, 675 S.E.2d 534, 539 (Ga. Ct. App. 2009), this delay is not justified.

---

[9] Even if it were permissible for Sun Group to delay notice until receiving the December
14, 2020 letter, Sun Group has not explained why it waited nearly two more months to
provide notice.

Consequently, as to the question of timely notice under the CGL Policy, Sun

Group's Motion for Summary Judgment is **DENIED**, and the Insurers' Motion for

Summary Judgment is **GRANTED**.

## B.   The Umbrella Policy

The Umbrella Policy provided coverage only when a claim exceeded the

limits of the CGL Policy.  Accordingly, that policy required notice "in writing as

soon as practicable" of any "incident *likely to involve*" the insurer.  [Doc. 50-8, pp.

6–7] (emphasis added).  In these circumstances, "[n]otice is required only when it

is 'reasonably likely' that the claim will be found to have a value in excess of the

primary insurance limits."  Evanston Ins. Co. v. Stonewall Surplus Lines Ins. Co.,

111 F.3d 852, 860 (11th Cir. 1997); see also Plantation Pipe Line Co. v. Stonewall

Ins. Co., 780 S.E.2d 501, 506–07 (Ga. Ct. App. 2015) ("[T]he notice obligation is

triggered by the insured's assessment regarding the likelihood that the monetary

amount for which the insured may be liable will exceed the ceiling of any

underlying primary policy or lower tier of excess coverage.").  The notice

provision of an excess policy contemplates "'the exercise of some judgment'" by

the insured.  Evanston Ins., 111 F.3d at 861 (quoting Herbert C. Brook, 21 Ins.

Counsel J. 131 (April 1954)).  "This standard requires the insured to base its

judgment regarding the amount of the claim against it upon sound reasons. . . . The

insured must use due diligence and take appropriate steps to make an informed judgment regarding the nature and amount of the claim."  Id.

The Court begins by addressing Sun Group and Birge's arguments.  To support the position that they provided timely notice under the Umbrella Policy, Sun Group and Birge rely on a February 28, 2022 memorandum prepared by defense counsel in the Underlying Lawsuit.  Sun Group and Birge seek to rely on the following statements from that memorandum:  "We need to know the location of the shooter to determine whether the shot was fired from an area the Defendant still had possession of or whether the shot came from a public roadway," [Doc. 54-3, p. 2]; "[i]f the victim is not an invitee, he is a licensee or a trespasser. . . . Consequently, there is little chance of the landowner being liable," id. at 3. Additionally, the memorandum contains a "litigation plan" section with sub-sections for "Litigation Objectives," "Valuation," "Course of Action," and "Expected Completion Date."  Id. at 3.  This section of the memorandum is entirely blank.  Sun Group and Birge consider the blank "Valuation" sub-section to be a significant indicator of the value of any claim related to the shooting.  Sun Group argues that "[i]f counsel retained by the Insurers did not appraise the value as implicating the [Umbrella Policy]," Sun Group should not have been expected to, either.  [Doc. 54, p. 10]; see also [Doc. 62, p. 13] ("Birge should not be

expected to have reached a different conclusion in the aftermath of the shooting than an attorney hired by [the Insurers] ultimately did well over a year later.").

There are two flaws with this contention. First, as this Court discussed extensively above, an insured's assessment of its own liability cannot excuse untimely notice. Second, the proper question for notice under an excess policy is whether the insured's actions were reasonable at the time. See Evanston Ins., 111 F.3d at 862 ("[T]his issue concerns 'what [the insured] knew, and when it knew it.' [The insured's] actions can be properly evaluated only in this context. We do not ask whether [the insured's] evaluation of the case was 'correct' or 'mistaken' but whether, at the time, it was based upon reason."). A memorandum prepared in February 2022 has little bearing on Sun Group and Birge's evaluation of the claim in August 2020 and, in particular, whether any such evaluation was based upon reason. This memorandum, therefore, does not change the Court's analysis.

Ultimately, the record in this case does not allow this Court to conclude that, as a matter of law, Sun Group and Birge provided timely notice under the Umbrella Policy. The Insurers contend that "any reasonable person in the shoes of Sun Group and Birge would recognize that a claim may arise, or is likely to arise,

as a result of a person dying from a violent crime on their premises."[10]  [Doc. 50-1, p. 20].  The Court agrees.  Importantly, as stated above, the insured must exercise due diligence when assessing whether a claim is "reasonably likely" to involve an excess policy.  The insured's determination will "control unless, as a matter of law, it is unreasonable."  Evanston Ins., 111 F.3d at 860.  In this case, Sun Group and Birge's determination was that the shooting did not constitute an "incident" within the meaning of the Umbrella Policy.  See [Doc. 62, p. 15].  Birge argues that it simply "did not know that the Umbrella Policy could be implicated in any amount," [Doc. 62, p. 15], and Sun Group similarly claims that "there is an absence of evidence" showing that Sun Group "reasonably should have appraised that there would be a claim with a value in excess" of the CGL Policy limits, [Doc. 54, p. 9].  As this Court has discussed, the determination that an event did not constitute an "incident" or "occurrence" under an insurance policy is insufficient under Georgia law to excuse late notice.

Moreover, the record contains no evidence that Sun Group and Birge exercised due diligence or took appropriate steps in making an informed judgment

---

[10] Sun Group claims that "[t]o the extent the Insurers are arguing a violent crime occurred on the premises, they are construing facts in their favor."  [Doc. 56, p. 15].  Construing the facts in Sun Group's favor—that a man was fatally shot with a high-powered rifle while standing on a ground-floor balcony that was visible from a public roadway—does not lead to a different outcome.

about the amount of the claim.  In fact, Sun Group and Birge's arguments show that they took *no* steps until, at the earliest, receiving the letters in December 2020 and January 2021.  The Court concludes that Sun Group and Birge's determination with respect to the shooting was unreasonable and, as a result, does not control. The Insurers have thus met their burden of showing that as a matter of law, Sun Group and Birge failed to provide timely notice under the Umbrella Policy.  On this issue, Sun Group's Motion for Summary Judgment is **DENIED**, and the Insurers' Motion for Summary Judgment is **GRANTED**.[11]

---

[11] In response to the Insurers' Motion for Summary Judgment, Sun Group argues that this Court should consider the role of prejudice in the notice analysis.  See [Doc. 56, p. 20]. The Underlying Lawsuit is stayed pending the outcome of this action.  Sun Group asserts that the stay demonstrates that the Insurers suffered no prejudice as a result of any untimely notice.  Id. at 22.  However, "there is no need for an insurer to prove it was prejudiced by an insured's failure to give notice."  Richmond v. Ga. Farm Bureau Mut. Ins. Co., 231 S.E.2d 245, 250 (Ga. Ct. App. 1976); see also Caldwell v. State Farm Fire & Cas. Ins. Co., 385 S.E.2d 97, 99 (Ga. Ct. App. 1989) ("State Farm is not required to show that it was prejudiced by the failure to give notice where the requirement is, as here, a valid condition precedent to coverage."); Canadyne-Ga. Corp. v. Cont'l Ins. Co., 999 F.2d 1547, 1557 (11th Cir. 1993) ("The Georgia Court of Appeals repeatedly confirms the rule in Georgia that an insurer need not prove prejudice in order to avoid paying benefits to the insured who fails to comply with the notice provision in the policy.").  Sun Group also asks this Court to certify the question of prejudice to the Supreme Court of Georgia "to determine the relevance of prejudice when an insurer claims notice is untimely."  [Doc. 56, p. 23].  However, certification is appropriate "[w]hen substantial doubt exists about the answer to a material state law question upon which the case turns." O.C.G.A. § 15-2-9(a).  Here, there is no substantial doubt, and certification is therefore inappropriate.

## CONCLUSION

For the reasons set forth above, the Insurers' Motion for Summary Judgment [Doc. 50] is **GRANTED**, and Sun Group's Motion for Summary Judgment [Doc. 54] is **DENIED**.

The Court **HEREBY DECLARES** that the Insurers do not owe any duties to defend or indemnify Sun Group and Birge in the Underlying Lawsuit or any claim or judgment arising therefrom.

**SO ORDERED** this 1st day of September, 2023.

_____

J. P. BOULEE
United States District Judge